UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSEPH ANTHONY REYNA,

      Plaintiff,

   v.

APPLE INC.,

      Defendant.

Case No.  26-cv-03137-RS

**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT**

## I. INTRODUCTION

Apple, Inc. ("Apple") moves to dismiss the wide-ranging complaint brought against it by pro se Plaintiff Joseph Reyna. This is Plaintiff's third version of the complaint, and for the reasons discussed below, each claim suffers dispositive defects. Accordingly, each count is dismissed, and Defendant's motion is granted. Plaintiff is granted leave to amend as to Counts 3–9, excluding his claim under the Stored Communications Act. Despite opportunities to amend, Reyna has failed to advance cognizable claims and therefore this will be his final opportunity to amend.[1]

## II. BACKGROUND[2]

Reyna filed his original complaint against Apple on April 13, 2026 and his first amended

---

[1] Early this morning on July 14, 2026, Reyna moved for leave to file a third amended complaint, Dkt. 71. Reyna may file an amended complaint consistent with this order. However, Reyna is advised that the Court takes no position at this time regarding whether the proposed third amended complaint filed with the recent motion, Dkt. 71-2, is consistent with this order.

[2] Unless otherwise stated, this order accepts well-pled factual allegations made in the complaint as true for the sole purpose of this motion to dismiss.

United States District Court
Northern District of California

complaint a week later on April 21, 2026. On May 16, 2026, before a motion to dismiss was filed and with Apple's consent, Reyna obtained leave to file the second amended complaint ("SAC"). The SAC is the operative complaint.

Reyna's claims stem from his alleged roles as an Apple Card holder, musical artist whose music is available on Apple's streaming service, layman with product ideas relevant to Apple, and consumer of Apple hardware and software products. He brings nine claims under federal and California law for consumer credit regulation violations, anti-competitive arrangements, false and deceptive advertising, intellectual property infringement, and product liability.

On June 11, 2026, Apple moved to dismiss each of Reyna's claims. Reyna filed an opposition, as well as numerous procedurally improper filings addressed in this Court's prior order, Dkt. 65. The hearing date for the present motion was vacated previously pursuant to Local Rule 7-1(b).

### III. LEGAL STANDARD

Rule 12(b)(6) governs motions to dismiss for failure to state a claim. Pursuant to the pleading standards set out in Rule (8)(a), a complaint must contain a short and plain statement of the claim showing the pleader is entitled to relief, Fed. R. Civ. P. 8(a), and "giv[ing] the defendant fair notice of what the… claim is and the grounds upon which it rests," *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic*, 550 U.S. at 555). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (internal quotation marks and citation omitted). Except for "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, and "conclusory allegations… contradicted by documents referred to in the complaint," *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998), courts "accept all factual allegations in the complaint as true and construe the pleadings in the light most

United States District Court
Northern District of California

favorable to the nonmoving party," *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Pursuant to these standards, a plaintiff also may not "file pleadings that do not tie factual averments against specific parties to individual causes of action," i.e., shotgun pleadings. *Gibson v. City of Portland*, 165 F.4th 1265, 1290 (9th Cir. 2026). "[D]istrict courts do not have to accept" such pleadings. *Id.* at 1289. "It is not the job of the district courts to make sense of the pleading, to supply facts to support the claim, or to imagine the claims that might fit the facts." *Id.* at 1289.

When a party lodges allegations of fraud or mistake, that party "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In this setting, a plaintiff must plead "the who, what, when, where, and how that would suggest fraud." *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (internal quotation marks omitted). While more exacting than the burden imposed by Rule 8(a), this standard is not insurmountable. Instead, where plaintiffs have "placed [d]efendants on sufficient notice to respond to the alleged fraud," "their allegations meet Rule 9(b)." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1020 (9th Cir. 2020).

In dismissing a complaint, leave to amend should be granted. However, dismissal without leave to amend is appropriate when it is clear the complaint's deficiencies cannot be cured by amendment or the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities to do so. *See Garmon v. Cnty. of Los Angeles*, 828 F.3d 837, 842 (9th Cir. 2016).

## IV. DISCUSSION

### A. Count 1: Equal Credit Opportunity Act Violation

Plaintiff's first count is based on Apple's alleged failure to comply with adverse action notification requirements mandated by the Equal Credit Opportunity Act ("ECOA"). *See* 15 U.S.C. § 1691(d). Apple argues it is not a creditor under ECOA, which defines "creditor" as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." *Id.* § 1691a(e). *See also* 12 C.F.R. § 1002.2(l) ("[T]he term creditor… includes a person who, in the ordinary course of business, regularly refers applicants or prospective applicants to creditors[.]"). Reyna, on the other

hand, argues his allegations sufficiently establish at this stage that Apple is a creditor under ECOA. He alleges that, while Goldman Sachs is the "issuing bank" for the Apple Card, Apple "controls the Apple Card enrollment interface, the applicant data environment, the credit criteria communicated to applicants, and the adverse-action notification channel". Dkt. 35-1, SAC, ¶ 8.

The question is a matter of first impression: whether a party's control over the user interfaces for credit card enrollment and management makes the party a creditor for adverse action notification purposes under ECOA. Other cases dealing with whether a defendant qualifies as a creditor under ECOA address more traditional players in the credit issuance ecosystem such as car dealerships. *See e.g., Salvagne v. Fairfield Ford, Inc.*, 794 F. Supp. 2d 826 (S.D. Ohio 2010); *Henry v. Westchester Foreign Autos, Inc.*, 522 F. Supp. 2d 610 (S.D.N.Y. 2007).

The *Salvagne* court noted that the "the regulation and comment [for ECOA's adverse action notification requirements] explicitly contemplate a continuum of credit functions and note that some functions require compliance with requirements that other functions do not." 794 F. Supp. 2d at 836. The defendant automobile dealership in *Salvagne* was indisputably a creditor for purposes of the Truth and Lending Act and identified as a creditor in the parties' retail installment contract, and yet it was not a creditor for notification purposes under ECOA because "when a dealership acts as a liaison between consumers and lenders, referring credit applications to lenders, the dealership in that capacity is a creditor under the ECOA *only with respect to the antidiscrimination and anti-discouragement provisions*." *Id.* (citing 12 C.F.R. Pt. 202, Supp. I) (emphases added). The *Salvagne* plaintiffs "ha[d] not pointed… to any facts in the record that would indicate that [the defendant] itself set the terms of the loan or otherwise placed itself in a position on the creditor continuum that would subject it to the notification requirements," and so defendant was entitled to summary judgment on the ECOA claim. *Id.*

In *Westchester Foreign Autos*, it was defendant's "regular course of business to review credit applicants' credit reports to assess the situation and send it to the bank" which defendant thought would approve the loan, but it was "not clear whether [defendant] regularly participate[d] in the actual decision to grant or deny credit to a particular applicant." 522 F. Supp. 2d at 615. Defendant's motion for summary judgment on the ECOA claim was denied, in part, because

factual questions remained regarding "whether [defendant] regularly arrange[d] or participate[d] in credit decisions in the ordinary course of its business." *Id.*

Here, Plaintiff alleges Apple "controls the Apple Card enrollment interface, the applicant data environment, the credit criteria communicated to applicants, and the adverse-action notification channel." Dkt. 35-1, SAC, ¶ 8. He does not allege that Apple set the terms of the loan or participated in credit decisions. On the "creditor continuum," Plaintiff's allegations regarding control over the interface, environment, and notification channel do not place Apple in "a position… that would subject [Apple] to the notification requirements." *Salvagne*, 794 F. Supp. 2d at 836. Count 1 is dismissed without leave to amend because amendment would be futile in turning Apple into a creditor for purposes of ECOA adverse action notification.

### B. Count 2: Unjust Enrichment

Under California law, "the elements for a claim of unjust enrichment [are] receipt of a benefit and unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000). The SAC's unjust enrichment claim is based on allegations that Reyna voluntarily shared a product idea on Twitter in September 2022, and Apple released a similar feature a year later. This claim fails as a matter of law. The allegations do not indicate Apple even saw the tweet—let alone that Apple received any benefit. More importantly, even if Apple had seen the tweet and used Reyna's idea, Reyna shared it voluntarily. There is nothing unjust at play. Finally, the unjust enrichment claim as based on the 2023 product release is time-barred with a two-year statute of limitations.

In his opposition, Reyna argues his unjust enrichment claim is based also on Apple's alleged exploitation of listener behavioral data for the development of other commercial products. Even if these facts had been alleged in relation to Reyna's unjust enrichment claim rather than scattershot, the claim would fail because Reyna does not allege unjust retention, such as failure to pay royalties, and his allegations that royalties are depressed based on other misconduct—i.e., false advertising or unfair competition—fail for the reasons discussed below.

In short, Reyna's unjust enrichment claim fails. Moreover, amendment would be futile in light of the statute of limitations. Count 2 is dismissed, therefore, without leave to amend.

United States District Court
Northern District of California

### C. Count 3: Section 2 of the Sherman Act

Reyna alleges Apple is liable under Section 2 of the Sherman Act for its actions as (1) a distributor in an "output market" for "premium digital music streaming on iOS-powered devices in the United States" and (2) a buyer in an "input market" for "independent artists recorded music distributed through iOS streaming platforms." Dkt. 35-1, SAC, ¶¶ 19, 48, 50. Section 2 of the Sherman Act prohibits anticompetitive conduct that monopolizes or threatens actual monopolization. 15 U.S.C. § 2. To make out a claim, Reyna must show: " '(a) the possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal antitrust injury.' " *Fed. Trade Comm'n v. Qualcomm Inc*., 969 F.3d 974, 990 (9th Cir. 2020) (quoting *Somers v. Apple, Inc*., 729 F.3d 953, 963 (9th Cir. 2013)). "[T]o demonstrate attempted monopolization a plaintiff must prove (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993).

First, the threshold step in any antitrust case requires that a plaintiff "accurately define the relevant market, which refers to the area of effective competition." *See Qualcomm*, 969 F.3d at 992. The relevant market "must encompass the product at issue as well as all economic substitutes for the product." *Hicks v. PGA Tour, Inc*., 897 F.3d 1109, 1120 (9th Cir. 2018) (quoting *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008)). "Economic substitutes have a 'reasonable interchangeability of use' or sufficient 'cross-elasticity of demand' with the relevant product." *Id.* (citations omitted). A properly defined relevant market must include all products "reasonably interchangeable by consumers for the same purposes." *United States v. E.I. du Pont de Nemours & Co*., 351 U.S. 377, 395 (1956).

Reyna defines the "output" market for "premium digital music streaming" as that on "iOS-powered devices." SAC ¶ 19. He asserts as justification for the iOS limit that a "5-10% increase in Apple Music subscription prices would not cause iOS users to migrate to non-iOS platforms because switching causes are prohibitive." *Id.* This reflects the Small but Significant Non-transitory Increase in Price ("SSNIP") test, i.e., if enough consumers would respond to a SSNIP

CASE NO. 26-cv-03137-RS

by purchasing the product from outside the proposed geographic market, making the SSNIP unprofitable, the proposed market definition is too narrow. *See Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys*., 778 F.3d 775, 784 (9th Cir. 2015). "Market definition does not necessarily require a SSNIP test at the pleading stage – but if Plaintiffs choose to rely on one, it must be plausible." *Gamboa v. Apple Inc*., 808 F. Supp. 3d 951, 967 (N.D. Cal. 2025). A plaintiff must allege a *profitable* price increase relative to other products in the market. *See id.* Reyna does not, rendering his SSNIP test allegation for the output market deficient. Reyna also supports the iOS limit by listing a series of features available to those who use Apple Music via an iOS-device. A difference in some features, however, does not establish a lack of substitutability.

Reyna defines the "input" market as "independent artist recorded music distributed through iOS streaming platforms." Dkt. 35-1, SAC, ¶ 19. He does not define an independent artist or provide any other market contours. These allegations are insufficient to establish a relevant market. *See hiQ Labs, Inc. v. LinkedIn Corp*., 485 F. Supp. 3d 1137, 1148-49 (N.D. Cal. 2020) (finding "antitrust claims deficient for failure to adequately allege a product market" where "the parameters of the [proposed] market–as pled–are vague").

In his opposition, Reyna again and impermissibly introduces new allegations outside of the SAC. He argues he has alleged an aftermarket theory of monopolization. "[T]o establish a single-brand aftermarket, a plaintiff must show: (1) the challenged aftermarket restrictions are not generally known when consumers make their foremarket purchase; (2) significant information costs prevent accurate life-cycle pricing; (3) significant monetary or non-monetary switching costs exist; and (4) general market-definition principles regarding cross-elasticity of demand do not undermine the proposed single-brand market." *Epic Games, Inc. v. Apple, Inc*., 67 F.4th 946, 977 (9th Cir. 2023). Even if Reyna had alleged an aftermarket theory of monopolization, it would fail for failure to satisfy the additional requirements to establish a single-brand aftermarket.

In short, failure to allege adequately a product market renders Reyna's antitrust claims insufficient.[3] Count 3 is dismissed.

_____

[3] Because of deficiencies in the allegations of a relevant market, Apple's additional arguments that Reyna has failed to allege monopoly or monopsony power, exclusionary conduct, and injury need

**D. Count 4: Lanham Act False Advertising**

To establish a false advertising claim under the Lanham Act, a plaintiff must allege: "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement[.]" *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir.1997). With regard to the making of a false statement, " 'district courts in the Ninth Circuit have held that the heightened pleading standard of Rule 9(b) applies... [and] requires the plaintiff to plead the "time, place, and specific content of the false representations," the identities of the parties to the misrepresentation, and what about the statement is claimed to be misleading.' " *Corsair Gaming, Inc. v. Choice Elecs. Inc.*, No. 5:25-CV-00045-BLF, 2025 WL 2822691, at *5 (N.D. Cal. Oct. 3, 2025) (citations omitted)

According to Reyna, Apple misrepresents its music chart rankings by suggesting they are determined by streaming activity and not disclosing they are impacted by "commercial arrangements." Dkt. 35-1, SAC, ¶ 51. However, Reyna fails to identify any specific representations to that effect. Even if Reyna had alleged specific representations by Apple regarding its chart methodology, he fails to allege materiality. Reyna alleges that "chart position is a factor on which listeners make streaming decisions, booking agents make engagement decisions, and sync supervisors make licensing decisions" and also that "the music industry treats Apple Music chart positions as commercial credentials." *Id*. However, Reyna does not allege that "merit-based" *representations about the rankings*, rather than the rankings themselves, influence listener streaming decisions.[4]

---

not be addressed.

[4] Confusingly, Reyna emphasizes that it is an alleged "structural information asymmetry"—where some "management team[s] understand[] Apple Music's chart architecture" and others do not— that "*makes Apple's chart methodology representations materially false*." *See* Dkt. 35-1, SAC, ¶ 20h (emphasis added). However, Lanham Act false advertising is not established by information

United States District Court
Northern District of California

The only specifically identified representations are alleged statements by Apple VP Oliver Schusser. Instead of representing chart methodology, Schusser's alleged statements represent that Apple validates every play and removes stream counts and returns royalties to the distribution pool when fraud is discovered. According to Reyna, these statements are false because "per-play validation cannot function during an infrastructure failure." Dkt. 35-1, SAC, ¶ 51. Yet, in Reyna's own words, "chart data for [a] disruption window [might be] reconstructed," such that Schusser's alleged statements are not false or misleading. *Id.* In other words, Reyna fails to show a likelihood of deception. Moreover, again, Reyna has failed to allege that Schusser's statements influence or are likely to influence listener streaming decisions. Without such allegations, Reyna fails to show either materiality or a likelihood of injury to himself, an artist competing for streams and the royalties and bookings that follow.

Again, Reyna also introduces new arguments in his opposition, pulling from the allegations associated with his UCL claim according to the SAC. This is improper gunshot pleading. Even if it were not, Reyna does not allege commercial injury, e.g., that he purchased music videos via the "Buy" button expecting permanent ownership. *See* Dkt. 35-1, SAC, ¶¶ 42–42.

For at least the foregoing reasons, Reyna fails to establish a claim for false advertising under the Lanham Act. Count 4, therefore, is dismissed.[5]

### E. Count 5: Unfair Competition Law

California's Unfair Competition Law ("UCL") provides a cause of action for "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof Code § 17200. A claim under the unlawful prong requires a predicate violation, a business act or practice that is "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010)

---

asymmetry among savvy industry players but rather likely deception of reasonable consumers.

[5] Reyna again introduces new allegations in his opposition. The newly alleged podcast interviews are improperly introduced and thus cannot be considered.

(quoting *Saunders v. Superior Ct.*, 27 Cal. App. 4th 832, 838–39 (1994)). Since each of Reyna's other claims fails, as discussed herein, there can be no claim under the unlawful prong of the UCL.[6]

A claim under the unfair prong of the UCL requires a business practice that "violates established public policy or [that] is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Washington Mut., Inc.*, 142 Cal.App.4th 1457, 1473 (2006) (quoting *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282, 1298–90, (2002)). California courts apply a variety of tests to determine whether conduct is unfair. *See, e.g., Doe v. CVS Pharm., Inc.*, 982 F.3d 1204, 1214–15 (9th Cir. 2020). Reyna focuses on the "tethering" test, which asks "whether the challenged conduct is tethered to an[ ] underlying constitutional, statutory or regulatory provision." *Id.* at 1214. He argues that the alleged conduct is tethered to federal antitrust laws and "federal payola statutes, " Dkt. 42, Opp., at 16 (citing 47 U.S.C. §§317, 507). Reyna cannot make out a claim under the unfair prong of the UCL based on federal antitrust violations because his antitrust claims fail.

As to his "payola" argument, Reyna references throughout the SAC "undisclosed commercial arrangements" that "distort[] chart rankings." *See e.g.,* Dkt. 35-1, SAC ¶¶ 34, 48, 51. The allegations describe commercial arrangements by which certain management teams "understand[] Apple Music's chart architecture from the inside" and other, "independent artist[s] competing for chart placement" do not. *Id.* ¶ 20.h. However, such arrangements do not reflect undisclosed, i.e., unlawful, " 'payola'— payments/bribes to officials at local radio stations" or other music broadcasters. *See United States v. Isgro*, 974 F.2d 1091, 1092 (9th Cir. 1992), *as amended on denial of reh'g* (Nov. 25, 1992). Apple is not a "radio station" as identified in 47 U.S.C. § 317 and § 508. *See* 47 U.S.C. § 317(a) ("All matter broadcast by any *radio station* for

---

[6] As Defendant points out, Reyna's Cartwright Act claim, pled "in the alternative" to his Sherman Act claim, fail for the same reason his Sherman Act claim fails and for the additional reason that Reyna has not pled agreements to restrain trade but only single firm monopolization, which is not cognizable under the Cartwright Act. *See Asahi Kasei Pharma Corp. v. CoTherix, Inc.*, 204 Cal. App. 4th 1, 8 (2012). The "multiparty arrangements" discussed by Reyna in his opposition are vertical agreements; they do nothing to reveal cognizable multi-firm monopolization. Dkt. 42, Opp. at 17.

which any money, service or other valuable consideration is directly or indirectly paid… shall, at the time the same is so broadcast, be announced as paid for or furnished." (emphasis added)); 47 U.S.C. § 508(a) ("[A]ny employee of a *radio station* who accepts … any money, service or other valuable consideration for the broadcast of any matter over such station shall, in advance of such broadcast, disclose th[at] fact." (emphasis added)).

The only non-conclusory allegations regarding commercial arrangements and chart rankings are that Drake and Apple Music partnered to promote both Drake's music and Apple Music through, *inter alia*, Apple Music (formerly Beats 1) radio programming. *See* Dkt. 35-1, SAC ¶ 48. Yet, Reyna admits the commercial arrangement between Drake and Apple Music was reported. *See id.* ¶ 20h. Moreover, Reyna's allegation that "Drake's [chart] prominence" must have been "purchased" because, if not, "Apple wasted $19 million on a partnership with zero platform impact… Apple's own financial decision is the proof… Apple set the amount" is implausible. *Id.* ¶ 48. Reyna has not alleged adequately a commercial arrangement that violates public policy and would support a claim under the unlawful prong.

Finally, a claim under the fraudulent prong of the UCL requires establishing that a business made a representation that has the likely effect of misleading or deceiving the public. *McKell*, 142 Cal.App.4th at 1471. These claims are also subject to the heightened pleading requirements of Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). A plaintiff must plead the circumstances of the alleged fraud with particularity, including the "who, what, when, where, and how" of the misconduct charged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). For the same reasons as discussed with regard to his Lanham Act claim, Reyna has not made out a claim of fraud or deceit.

### F.  Count 6: Electronic Communications Privacy Act Violations

#### i.  Wiretap Act

To establish a claim for unlawful interception under the Wiretap Act, Reyna must allege Apple "intentionally intercept[ed]… wire, oral, or electronic communication"[7] or "intentionally

---

[7] "[O]ral communication" must be "uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation," 18 U.S.C. §§ 2510(2), i.e., with a "reasonable expectation of privacy," *United States v. McIntyre*, 582

Case 3:26-cv-03137-RS    Document 73    Filed 07/14/26    Page 12 of 17

disclose[d]" or "use[d]" the contents of any such communication, while "knowing or having reason to know that the information was obtained through [unlawful] interception." 18 U.S.C. §§ 2511(1)(a), (c)–(d). Notably, to comply with Article III's standing requirements, he cannot allege that Apple intercepted, used, or disclosed just anyone's communication. He must allege Apple intercepted, used, or disclosed *his* communications because "the 'injury in fact' test requires more than an injury to a cognizable interest"; " '[i]t requires that the party seeking review be himself among the injured.' " *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 563 (1992) (quoting *Sierra Club v. Morton*, 405 U.S. 727, 734 (1972)). *See also Mass. v. E.P.A.*, 549 U.S. 497, 517 (2007) (" '[T]he gist of the question of standing' is whether [plaintiffs] have 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination.' " **(**quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

In *Lopez v. Apple, Inc.*, the amended class action complaint asserted the same interception violations as here, and it was dismissed for lack of standing because "Plaintiffs allege[d] no facts to suggest that their own private communications were intercepted by accidental [Siri] triggers." 519 F. Supp. 3d 672, 681, 683 (N.D. Cal. 2021). The *Lopez* plaintiffs' claims "rest[ed] solely on [a] *Guardian* article that reports the privacy harms of other class members that may not have affected [the] [p]laintiffs at all." *Id.* at 683. Reyna's ECPA claim rests entirely on the Apple interceptions alleged in the *Lopez* class action. However, Reyna alleges no facts indicating that he was eligible to be part of the *Lopez* class or that his communications were intercepted. Instead, he alleges he opted out of the *Lopez* class. *See e.g.,* Dkt. 35-1, SAC, ¶ 26. This, however, is insufficient to establish standing.[8] His ECPA claim must be dismissed.

### ii. Stored Communications Act

The Stored Communications Act ("SCA") provides a private right of action against anyone

---

F.2d 1221, 1223 (9th Cir. 1978).

[8] Plaintiff discusses Apple's deletion of Siri processing records. Yet, even if true, this does not excuse the absence of allegations indicating his communications were intercepted, disclosed, or used.

who: "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility… while it is in electronic storage in such system." 18 U.S.C. § 2701(a). The SCA also prohibits a person or entity providing an electronic communication service from "knowingly divulg[ing] to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1). The SCA's "1986 enactment was driven by congressional desire to protect third-party entities that stored information on behalf of users." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 609 (9th Cir. 2020) (citations omitted). "Since then, the SCA has typically only been found to apply in cases involving a centralized data-management entity[.]" *Id.*

Here, Reyna alleges his SCA claims "arise from the same category of iOS behavioral data collection" as in *Lopez*. Dkt 35-1, SAC, ¶ 9b. However, in *Lopez,* the SCA claim was dismissed because Siri did not qualify as a "facility" or an "electronic communication service" under the SCA. 519 F. Supp. 3d at 686. The same reasoning applies here. "[T]he SCA protects *stored* communications, whether in temporary or backup storage, not contemporaneous communications in transit from sender to recipient." *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1042 (N.D. Cal. 2014) (emphasis in original). Here, Reyna has failed to allege that Apple "accesses" any "facility" and thereby " 'obtains, alters, or prevents authorized access' " to communications " 'in electronic storage.' " *See id.* (quoting 18 U.S.C. § 2701(a)). *See also Lopez*, 519 F. Supp. 3d at 686; *In re iPhone Application Litig*., 844 F. Supp. 2d 1040, 1058 (N.D. Cal. 2012) (dismissing SCA claim because iPhones are not "facilit[ies] through which an electronic communication service is provided"). Reyna's SCA claim is dismissed, and, in light of the definitional deficiencies with regard to "facility," amendment would be futile. The SCA claim is dismissed without further leave to amend.

### G. Count 7: Digital Millenium Copyright Act Violation

A claim under Section 1202(b) of the Digital Millenium Copyright Act ("DCMA") requires a showing of (1) intentional removal or alteration of copyright management material and (2) "the mental state of knowing, or having a reasonable basis to know, that [the removal or

United States District Court
Northern District of California

alteration] actions 'will induce, enable, facilitate, or conceal' infringement." *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 673 (9th Cir. 2018); 17 U.S.C. § 1202(b)(1). As for the latter, Plaintiff's allegations are conclusory. He alleges that "Apple Music's file-processing systems remove Plaintiff's ISRC codes, artist attribution fields, and copyright ownership information form distributed JOECAT files," *see* Dkt 35-1, SAC, ¶ 59, without including any supporting facts. Even if these allegations were sufficient to show intentional removal or alteration of copyright material, Reyna does not adequately allege scienter.

Reyna's only allegations as to scienter are that "Apple knew it was removing CMI" and "had reasonable grounds to know that removing Plaintiff's [copyright management information ("CMI")] would facilitate infringement[.]" *Id.* ¶ 59. Yet, the Ninth Circuit made clear in *Stevens v. Corelogic, Inc.* that "the mental state requirement in Section 1202(b) [has] a more specific application than the universal possibility of encouraging infringement; specific allegations as to how identifiable infringements 'will' be affected" such as "a past 'pattern of conduct' or 'modus operandi' " "are necessary." 899 F.3d 666, 674 (9th Cir. 2018).

Reyna relies on, but mischaracterizes, *Kadrey v. Meta Platforms, Inc.* in his opposition. No. 23-CV-03417-VC, 2025 WL 744032 (N.D. Cal. Mar. 7, 2025). He erroneously characterizes that decision as binding on this court (which, as an opinion of another district court, it is not) and, more importantly, fails to engage with the inapposite details of its holding as to scienter. The *Kadrey* court found Section 1202(b) scienter adequately alleged because the plaintiffs there averred that (1) the defendant knew its artificial intelligence model "was especially prone to memorizing and generating outputs of CMI unless CMI was removed from its training data," and "voluntarily revealed that an early… model was trained on… copyrighted material," and (2) the defendant "took… steps to reduce the likelihood that the [model] would generate outputs that would reveal or indicate that copyrighted material was included in training datasets." *Id.* at *2 (internal quotation marks omitted). "Taken together, these allegations raise[d] a 'reasonable, if not particularly strong, inference' that [defendant] removed CMI to try to prevent [its model] from outputting CMI and thus revealing that it was trained on copyrighted material." *Id.* (citing *Friedman v. Live Nation Merchandise, Inc.*, 833 F.3d 1180, 1189 (9th Cir. 2016)). By contrast

here, Reyna does not allege that Apple has any pattern of itself misusing copyrighted material,[9] which would show a motivation for stripping CMI, nor does he allege specific steps taken to reduce the likelihood of being found out.

In sum, Reyna has not alleged intentional removal or alteration of CMI nor the requisite scienter for a violation of Section 1202(b) of the DCMA. Count 7 is dismissed.

### H. Count 8: Right of Publicity

A right of publicity claim under the common law requires defendant (1) used plaintiff's name or likeness (2) to defendant's advantage, commercially or otherwise, (3) without consent and (4) resulting injury. *Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1093-94 (N.D. Cal. 2011). A statutory claim under § 3344 additionally requires defendant (1) knowingly used plaintiff's name or likeness (2) for purposes of advertising with (3) a direct connection between the use and the commercial purpose. *Id.* (citing Cal. Civ. Code § 3344).

Reyna's right of publicity claim in the SAC focuses entirely on behavioral data exploitation. He asserts that Apple's use of listening behavior to train "commercial models," serve recommendations, and sell advertising violates Reyna's right of publicity. SAC ¶¶ 61–61a. Defendant correctly points out numerous flaws with Reyna's claim. First, use of listener behavioral data does not constitute use of Reyna's name or likeness. Second, there is no right of publicity claim where the alleged material is used "in a place where [it is] not visible to the public," such as in model training data. *Davis v. Elec. Arts, Inc.*, No. 10-CV-03328-RS, 2017 WL 8948083, at *4 (N.D. Cal. Dec. 11, 2017). Third, Reyna has not alleged any injury.

In his opposition, Reyna raises a new argument that does not appear in the SAC. He argues that his name and likeness are misappropriated via Shazam, an application that, upon request, displays the song currently being played so that users can identify a song they hear and like on the radio, at a coffee shop, at a party, or otherwise. This argument fails because the underlying facts

---

[9] Reyna alleges that "removing Plaintiff's CMI would facilitate infringement by preventing downstream platforms, licensees, and users from accurately identifying the rights-holder, thereby enabling unlicensed use without attribution" but does not allege that Apple misuses copyrighted artist material for its own gain as was alleged in *Kadrey*. *See id.*

United States District Court
Northern District of California

were not alleged in the SAC. For at least these reasons, Reyna's right of publicity claims fail.

**I.    Count 9: Magnuson-Moss Warranty Act Violation**

The Magnuson-Moss Warranty Act ("MMWA") provides a cause of action for express or implied warranties under state law. Under the MMWA, "implied warranties may be limited in duration to the duration of a written warranty of reasonable duration." 15 U.S.C. § 2308. Here, Apple limited the express and implied warranties for Reyna's iPhone purchase to one year.[10] Reyna concedes he did not file a claim to Apple but rather filed one with Verizon. Whatever the source of Reyna's confusion, the expiry with Apple has run. Reyna also suggests in his opposition that an exception based on latent defects applies, but his allegations fail to include any facts suggesting the alleged defect was latent. The claim fails based on the expiry of the warranties. Moreover, amendment would be futile since the statute of limitations has passed. Count 9 is accordingly dismissed without leave to amend.

**V. CONCLUSION**

For the foregoing reasons, Apple's motion is granted. Each of Reyna's claims is dismissed with leave to amend except for his claims for violations of ECOA, SCA, and MMWA and for unjust enrichment, which are dismissed without further leave to amend. Should Plaintiff seek to amend his complaint a third time, he must do so by July 25, 2026.

As previously advised, before any future filings, Plaintiff should seek assistance from the Federal Pro Bono Project's Legal Help Center, which may be able to provide basic legal help, but not legal representation. The Center may be reached by calling (415) 782-8982 or emailing FedPro@sfbar.org.

---

[10] *See* "Apple One (1) Year Limited Warranty," Apple Inc., https://tinyurl.com/5fh7cse2 (noting a one-year warranty for iPhone purchases). The SAC incorporates by reference the terms of the warranty, *see* SAC ¶ 63, and the terms "forms the basis" for Reyna's MMWA claim. Accordingly, the terms can be considered on this motion. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim…. The doctrine of incorporation by reference may apply, for example, when a plaintiff's claim about insurance coverage is based on the contents of a coverage plan or when a plaintiff's claim about stock fraud is based on the contents of SEC filings." (internal citations omitted)).

United States District Court
Northern District of California

United States District Court
Northern District of California

**IT IS SO ORDERED**.

Dated: July 14, 2026

_____
RICHARD SEEBORG
United States District Judge

CASE NO. 26-cv-03137-RS

17